## BELL vs. LOCKE.

An injunction will lie to restrain a defendant from assuming the name of the the complainant's newspaper, for the fraudulent purpose of imposing upon the public, and of supplanting him in the good will of his paper. But to entitle the complainant to the interposition of the court of chancery, the name of his paper must be used in such a manner as to be calculated to deceive or mislead the public, and to induce them to suppose that the paper printed by the defendant is the same as that which was previously being published by the complainant; and thus to injure the circulation and patronage thereof.

THIS case came before the court upon an order for the defendant to show cause why an injunction should not issue, restraining him from printing, publishing or circulating a newspaper under the name of the New Era.

*T. W. Tucker*, for the complainant.

*W. D. Craft*, for the defendant.

January 7.

1840.

Bell
v.
Locke.

THE CHANCELLOR. The allegation in the complainant's bill is, that the defendant has assumed the name of the complainant's newspaper, for the fraudulent purpose of imposing upon the public and supplanting him in the good will of his established paper, by simulating the name and dress thereof ; with the intent to cause it to be understood and believed by the community that the defendant's newspaper was the same as the complainant's, and thereby to injure the circulation of the latter. If this were in fact so, I should have no difficulty in making this order absolute. For although the business of publishing newspapers ought, in a free country, to be always open to the most unlimited competition, fraud and deception certainly are not essential to the most perfect freedom of the press. There is indeed no patent right in the names. Yet as the names of party newspapers, in these days, have no necessary connection with the principles which they advocate, and are manufactured as readily as the new names if not the new principles of political parties, there could be very little excuse for the editor of a new paper who should adopt the precise name and dress of an old established paper ; which would be likely to interfere with the good will of the latter by actually deceiving its patrons. In the case of *Hogg* v. *Kirby*, (2 *Ves.* 226,) Lord Eldon considered the publication by the defendant, of what upon its face purported to be a continuation of the plaintiff's magazine, to be such a fraud upon the good will of that periodical work as to call for the interference of the court of chancery. And in the more recent case of *Knott* v. *Morgan*, (2 *Keen's Rep.* 213,) Lord Langdale granted an injunction to restrain the defendant from running an omnibus, having upon it such names, words and devices as to form a colorable imitation of those which had previously been placed upon the omnibuses of the plaintiff; with the evident intention of obtaining a part of the business of the latter by deceiving the public. And this decision of the master of the rolls was subsequently affirmed by Lord Cottenham upon appeal.

1840.

Bell
v.
Locke.

The defendant in the present case, however, expressly denies that the new paper which he edits is published under the name of New Era with the intention of thereby inducing the public to suppose it is the same paper as the "Democratic Republican New Era." Neither do I think that the defendant's paper is such a similation of the complainant's present publication as to injure the circulation and patronage of the latter, by deceiving the public and inducing a belief that it is in reality the same paper. It is true, the two words of the title which are in roman capitals, are the same in both papers; except that in the defendant's publication they are printed upon a much larger type. But surely no one can mistake the wide spread wings and the warlike attitude of "the bird of Jove," which occupies so large a space in the heading of the defendant's paper, for the very modest device which sustains the Democratic Republicanism of the complainant's New Era. Besides, the defendant's paper, upon its face, purports to be a revival of an old publication in which he was formerly interested with the complainant; which publication had been voluntarily discontinued by both for more than eighteen months. The particular name, therefore, which he has assumed had been so long derelict, except in its subsequent democratic connection, that even an opposition editor might lawfully have seized upon it, and appropriated it to the use of his political friends; without any danger of deceiving the public, or drawing off the patronage of those who really wished to read the complainant's daily paper.

In the absence of any thing which is really calculated to deceive the intelligent patrons of the complainant's Democratic Republican New Era, the decision of Chancellor Sanford in *Snowden* v. *Noah*, (*Hopk. Rep.* 347,) is an authority against this application for an injunction, to restrain the defendant from publishing his paper, entitled "New Era, revived by Richard Adams Locke, its orignal editor."

The order to show cause is therefore discharged, with costs.