Verdict for the defendant.

COFFEE, The JOSEPH E. See Case No. 7,-530.

## Case No. 2,946.

### COFFEEN v. BRUNTON.

[4 McLean. 516; 7 West. Law J. 59; Cox, Am. Trade-Mark Cas. 82; Cox, Manual Trade-Mark Cas. 52.][1]

Circuit Court. D. Indiana. May Term, 1849.

#### INFRINGEMENT OF TRADE-MARK—INJUNCTION—DAMAGES.

1. Where a label or mark of another is used by an individual, with a fraudulent intent to recommend to purchasers an article similar in appearance to one favorably known in the market, an injunction will be granted.

[Cited in Walton v. Crowley, Case No. 17,-133; Hostetter v. Vowinkle, Id. 6,714.]

[1] [Reported by Hon. John McLean. Circuit Justice. Cox, Manual Trade-Mark Cas. 52, contains only a partial report.]

2. In commercial transactions, good faith is required. And where a deception is attempted to be practiced, by recommending a spurious article as genuine, to the injury of a party, chancery will restrain the aggressor.

3. In such a case at law. nominal damages will be given where no specific injury has been proved.

4. In such cases, the inquiry is, whether the label or mark is so assimilated to the label or mark of the complainant, as to deceive purchasers. And it seems not to be essential that there should be a fraudulent intent proved.

[Cited in Hostetter v. Vowinkle, Case No. 6,714.]

5. This principle as well applies for the protection of foreigners as citizens.

[Motion for a preliminary injunction to restrain infringement of a trade-mark.]

Mr. Norton, for complainant.

McLEAN, Circuit Justice. In his bill, the plaintiff represents that he was the inventor of a certain medicine, called the "Chinese Liniment," at great labor and expense; that the medicine was found to be efficacious in the cure of many diseases; and on being made known to the public, was purchased extensively, so as to afford a great profit to the plaintiff. It was sold in small bottles, with a suitable label, and accompanied by another paper containing directions for taking and applying the medicine in various complaints. And the complainant represents that the defendant, in the early part of the year 1848, in combination with one John Loree and others, fraudulently issued to the public a preparation called "Ohio Liniment," having upon the bottles containing it, labels, with directions exactly similar to that used by the complainant for his "Chinese Liniment," and that the said Brunton pretends that Loree was the inventor of said liniment, and so represents by hand-bills and advertisements; and that by these representations, which are charged to be false, the defendant has induced the public to believe that the composition sold by him contains the same ingredients as the "Chinese Liniment." and that by such means it is extensively purchased and used to the injury of the complainant, and the great benefit of the defendant. All which representations are alleged to be false, etc.

The complainant has not obtained a patent for his alleged invention; and if, in this respect, the allegations of his bill be admitted in regard to the invention, yet this gives him no exclusive right of property in the medicine. Any other individual has a right to make and sell the same medicine. An exclusive right, as the inventor, can only be obtained under the patent law, by a compliance with its provisions. Nor has the complainant an exclusive right to the label, as it is not a book, within the provisions of the statute. On neither of these grounds can the complainant claim an injunction. But if there be found in the representations of the defendant that his liniment is the same

as the "Chinese Liniment," which recommends it to the public to the injury of the complainant, it may be ground for the equitable interposition of this court. Suppose the article sold by the defendant is not only different from the "Chinese Liniment," but greatly inferior to it, the effect must be to destroy in the market the value of the plaintiff's liniment. And this is an injury for which a court of law can not give adequate compensation. However valuable the plaintiff's invention may be, yet if it be discredited by a worthless article, it would be impossible, in any reasonable time, to restore the public confidence in the genuine article. In this consists the injury; and the fraud arises from the false representations that the composition is the same. In Blanchard v. Hill, 2 Atk. 484, Lord Hardwicke said: "Every particular trader has some particular mark or stamp; but I do not know any instance of granting an injunction here to restrain one trader from using the same mark with another; and I think it would be of mischievous consequence to do it." And he further remarks: "It is not the single act of making use of the mark that was sufficient to maintain the action, but the doing it with a fraudulent design to put off bad cloths by this means, and to draw away customers from the other clothier." And in support of this doctrine he referred to Popham, 151, where it was held that an action at law would lie against a cloth-worker for using the same mark as another in the same trade. This doctrine of Lord Hardwicke is sustained by subsequent decisions. In Singleton v. Bolton, 3 Doug. 293, Lord Mansfield said: "If the defendant had sold a medicine of his own under the plaintiff's name or mark, there would be a fraud for which an action would lie." In the case of Sykes v. Sykes, 3 Barn. & C. 541, it was held that the defendant was liable for attempting to sell an article which he falsely represented as manufactured by the plaintiff. In Canham v. Jones, 2 Ves. & B. 218, it was held that the defendant had a right to sell the same kind of medicine, of as good or better quality, than the plaintiff's. The court decided in the case of Knott v. Morgan, 2 Keene, 213, that a company who run omnibuses, and who were named on their carriages, "The London Conveyance Company," had a right to call upon a court of chancery to restrain another company who called themselves "The London Conveyancer Company," as the words and devices were substantially the same, which would deprive the plaintiffs of profits arising from their established character. And in this case the doctrine of Lord Hardwicke, limiting the interference of the court to cases of fraud, is much shaken, if not overruled. In the case of Gout v. Aleploglu [6 Beav. 69, and 1 Chit. Gen. Pr. 721],[2] 7 Am. Jur. 277, "the

vice chancellor granted an injunction restraining the defendants from manufacturing and vending watches with the word 'Pessendede,' in Turkish characters, or with the plaintiff's cypher engraved on them, the plaintiffs having been in the habit for many years of supplying watches for the Turkish markets with those marks and words upon them, although the defendants used such word and cypher with their own name, and not the names of the plaintiffs, and the word 'pessendede' signified in the Turkish language, 'warranted.' The court then held that in this case the principle of fraudulent representation applied." And in Millington v. Fox, 3 Mylne & C. 338, the court carried the doctrine further, for they granted an injunction where certain marks had been used in ignorance of any other right.

From the above, it would seem that an intentional fraud is not necessary to entitle the plaintiff to protection; but that where the same mark or label is used, which recommends the article to the public by the established reputation of another, who sells a similar article, and the spurious article can not be distinguished from the genuine one, an injunction will be granted, although there was no intentional fraud. And I am inclined to think that this is a correct view of the principle; for the injury will be neither greater nor less by the knowledge of the party. If he has adopted the same mark which will cause his article to be taken for another in the market which is known and approved of, it is an injury which the law will redress. In commercial dealings the utmost good faith should be observed, and no one is permitted to go into the market with a deception of this character, so as to profit by the ingenuity, good faith, or established reputation of another. "A man may have no abstract right to use a particular mark," as was remarked by Judge Creswell, in Crawshay v. Thompson, 4 Man. & G. 386, but when such a mark is used to deceive purchasers, to the injury of a third party, an action will lie. In Bell v. Locke, 8 Paige, 75, Chancellor Walworth held a fraudulent use of the mark was a ground for relief. Day & Martin, manufacturers of blacking, complained of Binning, who also manufactured blacking, and sold it in bottles similar to theirs, and labelled with this difference only: Day & Martin described their blacking as "manufactured" by Day & Martin, whilst Binning described his as "equal to Day & Martin's." The words "equal to" were printed in very small type. In that case an injunction was granted, on the ground that the label of the defendant would deceive the purchaser. It has been stated by Judge Story, that where one of our own citizens fraudulently uses the mark of a foreigner, to recommend an article of domestic manufacture, he is liable to an action. In this respect there is no difference between

---

[2][From Cox, Am. Trade-Mark Cas. 82.]

a citizen and an alien. In an action at law, Blofield v. Payne, 4 Barn. & Adol. 410, the declaration stated that plaintiff, being the inventor and manufacturer of metallic hones, used certain envelopes for the same, denoting them to be his, and that defendant wrongfully made other hones, wrapped them in envelopes resembling the plaintiff's, and sold them as his own, whereby the plaintiff was prevented from selling many of his hones, and they were depreciated in value and reputation, those of the defendant being inferior. And the court held that the plaintiff was entitled to some damages for the invasion of his right by the fraud of the defendants, though he did not prove that their hones were inferior, or that he had sustained any specific damage. Where a right is invaded by a fraudulent act, though no specific injury be proved, some damages, at law, must be given. In the case above cited, on a motion for a new trial, Judge Patterson said, "it is clear the verdict ought to stand." A publisher of a magazine or newspaper, can not assume the name of one previously published, or represent the new publication as a continuation of the former. when it is not so. Hogg v. Kirby, 8 Ves. 215.

In the case under consideration, in his label. the plaintiff calls his medicine the "Chinese Liniment;" the defendant calls his the "Ohio Liniment;" but from the body of the label, and of the directions for the use of the medicine, it is clear that the language of the defendant is so assimilated to that of the plaintiff, as to appear to be the same medicine, the alterations being only colorable. There would seem to be no doubt that the intention of Loree, who prepared the liniment sold by the defendant, as his agent, was to avail himself of the favorable reputation acquired by the "Chinese Liniment," in the sale of his; and by most persons it would be received as the same medicine. From the hand-bill published by Loree, the medicine sold by him is asserted to contain the qualities or ingredients of the "Chinese Liniment," and some other ingredient which renders it more efficacious. In his bill the plaintiff avers that this allegation is false; and especially in saying that the "Ohio Liniment" contains the ingredients of which the "Chinese Liniment" is composed. The case is considered as coming within the principles above cited, and an injunction is granted to enjoin the defendant from using the label or directions accompanying the liniment he sells, as aforesaid, or other labels or directions, or any advertisements or hand-bills respecting the same words and sentences which are used by the complainant in his label and directions, and which tend to produce an impression on the purchaser and the public that the liniment sold by the defendant contains the same ingredients as the "Chinese Liniment," and

is, in effect, the same medicine. On the filing of the answer, a motion will be heard to dissolve the injunction.

[NOTE. On the final hearing the court apparently refused to grant an injunction. See the denial of an application for rehearing, Case No. 2,947 ]