WARREN MARSH & another *vs.* FREDERICK BILLINGS & others.

M. agreed with S., the lessee of the Revere House, to keep good carriages, horses, and drivers, on the arrival of certain specified trains, at a railroad station, to convey passengers to the Revere House, and in consideration thereof, S. agreed to employ M. to carry all the passengers from the Revere House to the station, and authorized him to put upon his coaches and the caps of his drivers, as a badge, the words " Revere House."    A similar agreement, previously existing

between S. and B., had been terminated by mutual consent; but B. still continued to use the words " Revere House " as a badge on his coaches and on the caps of his drivers, although requested not to do so by S.; and his drivers called " Revere House " at the station, and diverted passengers from M.'s. coaches into B.'s. In an action on the case brought by M. against B., for using said badge and diverting passengers, it was held that M., by his agreement with S., had an exclusive right to use the words " Revere House," for the purpose of indicating that he had the patronage of that house for the conveyance of passengers ; that if B. used those words for the purpose of holding himself out as having the patronage and confidence of that establishment, and in that way to induce passengers to go in his coaches rather than in M.'s, this would be a fraud on the plaintiff, and a violation of his rights, for which this action would lie, without proof of actual, specific damage ; and that M. would be entitled to recover such damages as the jury, upon the whole evidence, should be satisfied that he had sustained, and not merely for the loss of such passengers, as he could prove to have been actually diverted from his coaches to the defendant's.

THIS was an action of trespass on the case. The declaration contained two counts, the first of which stated that the plaintiffs, on the 16th of January, 1849, and ever since, had purchased for a valuable consideration, and were possessed of the sole and exclusive right and privilege of representing and acting for Paran Stevens, the lessee of the hotel or public house in Boston, known as the Revere House, at the station of the Boston and Worcester railroad company in Boston, in and about the carriage and transportation for hire of such passengers arriving at the station as should require the services and aid of hackmen and hacks authorized by Stevens to act for and represent him in this behalf, to transport them and their baggage from the station to the Revere House, and of the exclusive right of using, wearing, and placing upon their carriages and servants, stationed at said station, the name, badge, and designation of " Revere House " ; and that, to enable them to exercise their said rights and privileges beneficially, the plaintiffs had been put to great outlay and expense, and had bought and maintained two carriages at a great expense, to wit, the sum of four thousand dollars, and had hired and kept divers servants at great wages; and, at the time of the committing by the defendants of the grievances complained of, were used and accustomed to obtain and transport for hire, from the station to the Revere House, a great number of such passengers and their baggage ; and by reason of the transport-

ation of such passengers and baggage, great profits and advan-
tages had accrued, and still ought to accrue to the plaintiffs.
Yet the defendants, well knowing the premises, but contriv-
ing and unjustly intending to injure the plaintiffs in the exer-
cise of their said business or occupation, and to deprive them
of great parts of their said profits and advantages, * without the
license or consent of the plaintiffs, or of Stevens, and against
the will of the plaintiffs, and of Stevens, did unlawfully, on
the 16th of January, 1849, and on divers other days since that
day, and before the purchase of this writ, keep · and maintain,
and caused to be kept and maintained, at said station a large
number of carriages and servants, with the name, badge or
designation of " Revere House," marked, placed or worn upon
them and each of them, in imitation of and as the name, badge
and designation worn and used by the plaintiffs as aforesaid,
and in order to denote to such passengers that said coaches
and servants were authorized by Stevens to transport them
and their baggage from the station to the Revere House, and
did knowingly and deceitfully represent, and cause their said
servants to represent to such passengers, that said coaches and
servants were authorized and placed by Stevens at the station,
to transport for hire said passengers and their baggage from the
station to the Revere House; by means of which a great number,
to wit, five hundred of such passengers were induced to enter
the defendants' carriages with their baggage, and to desert and
leave the carriages of the plaintiffs, and the plaintiffs thereby
lost the profits and advantages which would otherwise have
accrued to them from transporting for hire said passengers
and their baggage from the station to the Revere House, and
were subjected to great loss in their said business or occupa-
tion.

The second count was precisely like the first as far as the star
(*) above, and then alleged that the defendants did unlawfully,
on the 16th of January, 1849, and on divers other days since
that day, and before the purchase of this writ, interfere, and
cause their servants to interfere with the plaintiffs, in the exer-
cise of their said business or occupation, and in the obtaining
and transportation by the plaintiffs of such passengers and their

baggage from the station to the Revere House, insomuch that many passengers, to wit, five hundred, who were then and there about to enter the plaintiffs' carriages, were prevented from so doing, and the plaintiffs were thereby prevented from obtaining and transporting for hire such passengers and their baggage in such plenty as they would otherwise have done, and from realizing the profits and advantages which ought to have accrued to them in their said business and occupation, and were therein subjected to great loss.

At the trial before *Bigelow*, J., in the court of common pleas, the plaintiffs, to prove their case, called, as a witness, Paran Stevens, the lessee of the Revere House, who testified that on the 1st day of May, 1849, he made a verbal agreement with the plaintiffs, by which they agreed to keep coaches at the station of the Boston and Worcester railroad in Boston, to convey passengers arriving at the station by the "long trains," who might desire to go to the Revere House, and further agreed to keep good horses and coaches, and to employ first rate drivers to do the work of conveying passengers, to the acceptance of the passengers and of Stevens ; in consideration of which, he agreed to employ the plaintiffs to convey all passengers who might wish to go from the Revere House to the station, and authorized the plaintiffs to put on their coaches, and on the caps of their drivers, as a badge, the words " Revere House." He further testified, that a similar agreement had existed between him and the defendants, from the time when he first opened the Revere House, until the 1st of May, 1849, when it was terminated by him with the assent of the defendants, because the defendants did not do the work to his satisfaction ; and that the defendants, under this agreement, had placed the words " Revere House " on their coaches, and on the caps of their drivers.

It further appeared in evidence, that after the 1st of May, 1849, and during the times alleged in the plaintiffs' writ, the defendants continued to carry the words " Revere House " on their coaches, and on the caps of their drivers; that their coaches and drivers so marked, were kept at the station of the Boston and Worcester railroad, and on the arrival of the

" long trains," their drivers were in the constant habit of calling out " Revere House," in loud tones, in the presence and hearing of the passengers by said trains. It also appeared, that some time in July, 1849, Stevens requested one of the defendants to discontinue the use of the words " Revere House " on their coaches, and on the caps of their drivers; but that he refused so to do, saying he had a right to use them.

There was also some evidence that the defendants by their agents on one or more occasions stated to persons desiring conveyance to the Revere House, that they were the agents employed by the " Revere House," or by Mr. Stevens to convey passengers, and that the plaintiffs were not, or words to that effect, by means of which statements, some passengers were diverted from the coaches of the plaintiffs, and induced to go in the coaches of the defendants. Upon this point, however, the evidence was contradictory. One person in the employ of the defendants, called as a witness by the plaintiffs, testified that on one occasion he induced three persons to leave the coach of the plaintiffs, and go in the defendants' coach, by stating to them that his coach was the regular coach, and that they had got into the wrong coach. The plaintiffs also offered evidence that the defendants, during the time alleged in the plaintiffs' writ, carried large numbers of passengers from the station to the Revere House.

The plaintiffs, on the foregoing evidence, contended that they had an exclusive right to the use of the words " Revere House " on their coaches, and on the caps of their drivers; that these words were in the nature of trade marks, and that their action would lie, on showing that the defendants had used these words in the manner above stated.

But the judge instructed the jury that no person had the legal right to claim the exclusive privilege of conveying passengers from the station of the Boston and Worcester railroad to the Revere House; that any person, who saw fit to engage in it, had a right to carry on the business, and to indicate, by suitable signs on his coaches, by badges on the caps of his drivers, and by calling at the station in the hearing of passengers, the place to and from which he conveyed passengers,

that the plaintiffs in this case could not recover damages of the defendants, merely by showing that the defendants had on their coaches, and on the caps of their drivers, the words " Revere House," and that they had called out " Revere House," in the hearing of passengers in the station, and thereby obtained the conveyance of passengers from the station to the Revere House. But that if, on the whole evidence before the jury, the burden of proof being on the plaintiffs, the jury were satisfied that the plaintiffs were authorized by Stevens to hold themselves out as his agents at the station, for the transportation of passengers thence to the Revere House, and the defendants knowing this, by means of false representations that they were the agents of Stevens for this purpose, or that the plaintiffs were not, induced persons to go by the coaches of the defendants, instead of going by the coaches of the plaintiffs, and that thereby passengers were actually diverted from the plaintiffs' coaches, then the plaintiffs might recover of the defendants such damages as the plaintiffs had shown they had sustained in consequence of such false representations, and the loss of passengers thereby occasioned.

The jury returned a verdict for the plaintiffs, assessing damages in the sum of seventy five cents, and the plaintiffs excepted to the instructions of the judge.

*W. Sohier*, for the plaintiffs. 1. The plaintiffs do not claim the exclusive right to convey passengers from the Boston & Worcester railroad station to the Revere House, nor the exclusive right to the use of the words " Revere House." The first count in the declaration charges the defendants not merely with using the badges which the plaintiffs have a right to use, but with using the name " Revere House," in imitation of the plaintiffs' badges, and thereby inducing passengers to believe that the defendants were authorized by that house. The second count is for interfering with the plaintiffs' business.

Stevens, the lessee of the Revere House, had a right to grant the plaintiffs the privilege of marking their coaches and the caps of their drivers with the words " Revere House," to denote their employment by that establishment; the defend-

ants, in persisting in using the same marks and badges, inter-
fered with the plaintiffs' privilege; and this interference is a
sufficient cause of action.    The reason why no action on the
case for such an injury is to be found in the books is, that
where the courts have full equity jurisdiction, the remedy by
injunction is more summary.

The acts of wearing and using these badges were of them-
selves fraud, and the jury should have been instructed that
the use of the marks and badges by the defendants was
*primâ facie* evidence of an intent to hold themselves out as the
authorized agents of Stevens; or, at least, that if they believed
the defendants to have worn the badges and marks in question,
for the purpose of inducing, in the public, the belief that they
were the authorized agents of the Revere House, it would be
such an interference with the plaintiffs' rights as would sup-
port this action.    This case is precisely analogous to those in
which trade marks were imitated; as in *Sykes* v. *Sykes,* 3 B. &
C. 541; *Blofield* v. *Payne,* 4 B. & Ad. 410; *Rodgers* v. *Nowill,*
5 Man. G. & S. 109; *Taylor* v. *Carpenter,* 3 Story R. 458;
*Coats* v. *Holbrook,* 2 Sandf. Ch. 586 ; or the name of a news-
paper; as in *Bell* v. *Locke,* 8 Paige, 75 ; or the names, marks
and devices on an omnibus; as in *Knott* v. *Morgan,* 2 Keen,
213.    See also 2 Story on Eq. § 951. And *Stone* v. *Carlan,* 13
Law Reporter, 360, is precisely in point.

2. Upon the question of damages, the plaintiffs were held
to a rule much too strict.    The jury should have been allowed
to give damages for the obstruction of the plaintiffs' rights,
and to estimate the injury actually resulting to their business
from the defendants' acts, taking into consideration the number
of passengers carried by the defendants from the station to the
Revere House.    See analogous cases for the infringement of
patent rights; *Whittemore* v. *Cutter,* 1 Gallis. 478, 483; *Earle* v.
*Sawyer,* 4 Mason, 1; *Lowell* v. *Lewis,* 1 Mason, 182.    But in the
case at bar, the judge required the plaintiffs to prove the specific
number of passengers actually diverted from the plaintiffs' to
to the defendants' coaches.    This they could not, from the
nature of the case, do with precise accuracy.    In *Keeble* v
*Hickeringill,* 11 East, 573, note (*a*), which was an action on

the case for designedly frightening away wild fowl from the plaintiff's decoy pond, Lord C. J. Holt, to the objection, that the declaration did not state the number or nature of the wild fowl frighted away, answered that it was not possible for the plaintiff to know the number or nature thereof. And he held that the action well lay for the disturbance of the plaintiff's right.

This being an action of tort, and the tort being of a wilful nature, the jury were at liberty to give such damages as upon the whole evidence they should consider reasonable. Sedgw on Dam. 488, and cases cited; *Leland* v. *Stone*, 10 Mass. 459, 462; *Weld* v. *Bartlett*, 10 Mass. 470; *Stone* v. *Codman*, 15 Pick. 297; *Richards* v. *Farnham*, 13 Pick. 451.

*W. Brigham*, for the defendants. Stevens, the lessee of the Revere House, had no exclusive right to convey passengers from the railroad station to his house, nor had he the exclusive right to put upon his coaches, or the caps of his servants, the words " Revere House." His business is that of keeping a public house, and not the transportation of passengers, and his authority as an innholder does not extend beyond his own premises. Rev. Sts. *c.* 47, § 5. Having no such right himself, he could assign none to the plaintiffs. The defendants, in common with all other citizens, have a right to convey passengers from the Boston & Worcester railroad station, through the public streets, to any public house, subject only to such regulations as the mayor and aldermen may prescribe; and they have a right also, by suitable declarations, indications and signs, to inform passengers that they can and will take them to the places designated. The use by the defendants of the words " Revere House " did not indicate that they were the authorized servants of that house, but only that that was their destination.

The cases of trade marks bear no analogy to the present. Whenever actions have been maintained for using trade marks and the like, it has been on the ground that the plaintiff had a property in, and an exclusive right to, the thing used. *Carrington* v. *Taylor*, 11 East, 571; *Sykes* v. *Sykes*, 3 B. & C. 541; *Rodgers* v. *Nowill*, 5 Man. G. & S. 109; *Taylor* v. *Carpenter*,

3 Story R. 458; *Coats* v. *Holbrook*, 2 Sandf. Ch. 586; *Croft* v. *Day*, 7 Beavan, 84.

*Knott* v. *Morgan*, 2 Keen, 213, 219, cited by the plaintiffs, went upon the ground of fraud. The Master of the Rolls, in granting an injunction in that case, said: " It is not to be said that the plaintiffs have any exclusive right to the words ' Conveyance Company,' or ' London Conveyance Company,' or any other words; but they have a right to call upon this court to restrain the defendant from fraudulently using precisely the same words and devices which they have taken for the purpose of distinguishing their property, and thereby depriving them of the fair profits of their business, by attracting custom on the false representation that carriages, really the defendant's, belong to, and are under the management of the the plaintiffs." Here the judge allowed the plaintiffs to recover so far as there was any false representation or fraud, but not otherwise.

The only case which supports the plaintiffs' position is *Stone* v. *Carlan*, 13 Law Reporter, 360, decided by a single judge of the superior court of the city of New York, and the authorities therein cited do not bear out the decision.

The opinion was delivered at March term, 1852.

FLETCHER, J. This is an action on the case, sounding in tort. The principle involved in the merits of the case is one of much importance, not only to persons situated as the plaintiffs are, but also to the public. But this principle is by no means novel in its character, or in its application to a case like the present. It is substantially the same principle, which has been repeatedly recognized and acted on by courts, in reference to the fraudulent use of trade marks, and regarded as one of much importance in a mercantile community. Vast numbers, no doubt, of the strangers who are continually arriving at the stations of the various railroads in the city, have a knowledge of the reputation and character of the principal hotels, and would at once trust themselves and their luggage to coachmen supposed to have the patronage and confidence of these establishments. Not only much wrong might be done to individuals situated like the plaintiffs, but great fraud

and imposition might be practised upon strangers, if coachmen were permitted to hold themselves out, falsely, as being in the employment, or as having the patronage and countenance of the keepers of well known and respectable public houses.    It was said, in behalf of the defendants, that the lessee of the Revere House had no exclusive right to convey passengers from the Worcester railroad to his house, nor had he the exclusive right to put upon his coaches or the badges of his servants the words " Revere House," and could confer no such exclusive right on the plaintiffs; that the defendants, in common with all other citizens, have a right to convey passengers from the Worcester railroad to any public house, and have a right to indicate their intention so to do, by marks on their coaches and on the badges of their servants.

This may all be very true, but it does not reach the merits of the case.    The plaintiffs do not claim the exclusive right of using the words " Revere House;" but they do claim the exclusive right to use those words in a manner to indicate, and for the purpose of indicating, the fact that they have the patronage and countenance of the lessee of that house, for the purpose of transporting passengers to and from that house, to and from the railroads.    The plaintiffs may well claim that they had the exclusive right to use the words " Revere House," to indicate the fact that they had the patronage of that establishment; because the evidence shows that such was the fact, and that the plaintiffs, and they alone, had such patronage of that house, by a fair and express agreement with the lessee. For this privilege they paid an equivalent in the obligations into which they entered.    The defendants, no doubt, had a perfect right to carry passengers from the station to the Revere House.    And they might perhaps use the words " Revere House," provided they did not use them under such circumstances and in such a manner as to effect a fraud upon others.

The defendants have a perfect right to carry on as active and as energetic a competition as they please, in the conveyance of passengers to the Revere House or any other house. The employment is open to them as fully and freely as to the

plaintiffs. They may obtain the public patronage by the excellence of their carriages, the civility and attention of their drivers, or by their carefulness and fidelity, or any other lawful means. But they may not by falsehood and fraud violate the rights of others. The business is fully open to them, but they must not dress themselves in colors, and adopt and wear symbols, which belong to others.

The ground of action against the defendants is not that they carried passengers to the Revere House, or that they had the words " Revere House " on the coaches, and on the caps of the drivers, merely ; but that they falsely and fraudulently held themselves out as being in the employment, or as having the patronage and confidence of the lessee of the Revere House, in violation of the rights of the plaintiffs. The jury would have been well warranted by the evidence in finding that the defendants used the words " Revere House," not for the purpose of indicating merely that they carried passengers to that house, but for the purpose of indicating, and in a manner and under circumstances calculated and designed to indicate, that they had, and to hold themselves out as having, the patronage of that establishment. Upon the evidence in the case, the jury should have been instructed, that if they were satisfied by the evidence that the plaintiffs had made the agreement with the lessee of the Revere House, as stated, they had, under and by virtue of that agreement, an exclusive right to use the words " Revere House," for the purpose of indicating and holding themselves out as having the patronage of that establishment for the conveyance of passengers ; and that if the defendants used those words, in the manner and under the circumstances stated in the evidence, for the purpose of falsely holding themselves out as having the patronage and confidence of that house, and in that way to induce passengers to go in the defendants' coaches, rather than in those of the plaintiffs, that would be a fraud on the plaintiffs, and a violation of their rights, for which this action would lie, without proof of actual or specific damage ; that if the jury found for the plaintiffs, they would be entitled to such damages as the jury, upon the whole evidence, should be satis-

fied they had sustained; that the damage would not be confined to the loss of such passengers as the plaintiffs could prove had actually been diverted from their coaches to those of the defendants; but that the jury would be justified in making such inferences, as to the loss of passengers and injury sustained by the plaintiffs, as they might think were warranted by the whole evidence in the case.

Though the instructions, as given, may have been intended to conform substantially to these views, yet, upon the whole, it seems to the court, that the principles of the law, upon which the rights of the parties were to be determined, were not stated with all that distinctness and accuracy, which the practical importance of the case requires.

The principles of law which govern this decision are so fully settled by numerous decisions, that it seems unnecessary to go into any particular examination of authorities, but it is sufficient merely to refer to some leading cases. *Coats* v. *Holbrook,* 2 Sandf. Ch. 586; *Blofield* v. *Payne,* 4 B. & Ad. 410; *Morison* v. *Salmon,* 2 Man. & Gr. 385; *Knott* v. *Morgan,* 2 Keen, 213; *Croft* v. *Day,* 7 Beavan, 84; *Rodgers* v. *Nowill,* 5 Man. G. & S. 109; *Bell* v. *Locke,* 8 Paige, 75; *Stone* v *Carlan,* 13 Law Reporter, 360.    *New trial ordered.*