ELIZA WALKER & others, *ex parte*

April Term, 1873.

CORPORATE NAME, OBJECTION TO.—The court may, upon objection made to the organization of a corporation by a specific name, upon the ground that the name has already been adopted by a pre-existing corporation, or is so nearly the same as to lead to confusion, require a modification of the name sufficient to obviate objection.

PETITION of incorporation.

*Guild & Dodd*, for petitioners.
*John Ruhm*, for defendants.

THE CHANCELLOR :—This is, perhaps, the first case under our law authorizing the chancery courts to organize corporations, in which persons have come forward to oppose the prayer of the petitioners.

The petitioners state that they are citizens of Davidson county, Tenn., and are desirous of organizing as a body politic and corporate for charitable and benevolent purposes merely, to-wit, for the purpose of aiding each other in time of sickness and distress with money and personal attention, under the name and style of "The Ladies' Good Samaritan Society of Nashville." The petition does not refer to any law under which such corporations can be organized, and designating the powers conceded to them. It asks for two or three powers which belong to corporations in their very nature, such as the power to sue and be sued, to use a common seal, and to make by-laws. Then it asks specially for these powers :

1st. To have succession for ninety-nine years.

2d. That the proposed corporation have power to hold, purchase, dispose of, in any manner in which other persons can do it, and convey real and personal estate.

3d. And power to appoint such subordinate officers and agents in the county of Davidson, as well as in any other county of the state of Tennessee where the number of members will justify the establishment of branch associations, as

7

the business of the corporation requires, to prescribe the duties of such agents and officers and to fix their compensation.''

I came to the conclusion at the last term, in the case of *John Lumsden and others, ex parte* ( *ante,* p. 83 ), that the power to create corporations was legislative, and could not, under our state constitution, be delegated to the courts ; that the chancery courts could only organize such corporations as they were authorized to do by express law designating the object and and kind of corporation ; and that the court could only clothe such corporations with such rights, powers, and privileges, and subject to such conditions, limitations, and restrictions as were, by a general law, prescribed for the specific corporation sought to be organized. I have seen no reason to change these conclusions, but, on the contrary, have become more thoroughly convinced of their correctness.

This court is authorized by the act of January 26th, 1871, ch. 54, § 9, to organize '' charitable institutions.'' That section expressly directs that '' the powers and privileges of such corporations shall be as prescribed in §§ 1470, 1471, 1472, and 1473, of the Code of Tennessee.'' The 4th section of the same act directs that '' the general powers, and privileges and liabilities of corporations created by chancery courts, shall be the same as prescribed in chapter 2, article IV of the Code of Tennessee, from §§ 1474 to 1497 inclusive.''

The sections of the Code referred to in the act of 1871, do not contain, among the powers enumerated for charitable institutions, the particular powers asked for in the petition, and enumerated as above as 1st, 2d, 3d. It is not in the power of this court to organize the petitioners with such powers. All I can do for them is to organize them with the powers, privileges and liabilities, and subject to the conditions, limitations, and restrictions contained in the Code from §§ 1470 to 1473, inclusive, and from §§ 1474 to 1497, inclusive.

None of these sections, it seems, fixes definitely the period of the duration of such corporations. Nor does the act of

1871 supply the omission. Section 1474 of the Code, however, provides as follows :

" Every private corporation has power :

1st. To have succession by the corporate name for the period limited in its charter ; and where no period is limited, for the longest time allowed for such incorporation."

If the words "such incorporation" mean an incorporation of the kind of that in whose charter, whether special under the old constitution or by general laws as under the new, "no period is limited," we are at sea again. But if they mean, as I am inclined to think, any private corporation, then the petitioners may designate any period not exceeding the longest conceded to private corporations by any general law. The counsel for the petitioners may examine for himself and bring this point up again, if he sees proper, otherwise I shall limit the duration of the corporation to fifty years, the period fixed by § 1469 of the Code for religious, and other analogous incorporations.

The application in this case is opposed by a corporation chartered on the 25th of February, 1870, by the General Assembly, under the name of " The Nashville Ladies' Good Samaritan Society, No. 2," but which, from their petition, would seem to have been acting under the name, omitting the *addendum* "No. 2." The objects of this organization are the same as those of the organization sought by petitioners. This opposing corporation states that it is in full and prosperous organization, and has accomplished much good. It does not object to the incorporation of petitioners under any other name than the one chosen, but submits that to allow them to be incorporated under the name sought, would lead to interminable confusion and dispute, and would result in evil consequences to both societies.

In the case to which I have already referred, I came to the conclusion that the publication required by the act of 1871, was a mere matter of form ; that if the petitioners brought themselves within the provisions of the law authorizing their organization as a corporation, they were entitled to

be organized although the whole world objected; and, on the other hand, if they failed to bring themselves within the law they were not entitled to be organized although no one objected, or, if organized under the latter circumstances, the act would be simply void. In other words, the chancery court, in the organization of corporations, acts merely ministerially, just as the county court and the register acted ministerially in the organization of municipal corporations under the old law. I have seen no reason to change these views, and still adhere to them.

In this view, the petitioners are entitled to be organized, as before explained, by any name they may choose to select, provided it is not in conflict with the objects of the incorporation, or objectionable upon some independent ground.

It does not follow, however, that if a corporation is organized under the ministerial power of the court, that the court, in its judicial capacity, might not, at the instance of any party aggrieved, upon a bill filed for the purpose, enjoin the new corporation from using the name which it had selected, upon the ground that the plaintiff had acquired a prior right to it. Beyond all doubt, men and corporations may have rights in a name, just as they may have in a trade mark, which no other person will be permitted causelessly to infringe. Property in a name is a well recognized right of the civil law, and suits are common in France and Scotland to enforce such rights, and to prohibit their infringement. Such suits have not been common under the English system of laws, but suits to prevent the fraudulent use of names are not unknown to courts of chancery. It is very true that it has been doubted by very high English authority whether property can be acquired merely in a name, but the court of chancery has never hesitated to prevent, by injunction, the use of names, marks or letters by which an attempt is made to interfere with the business, or to use them to the detriment of a prior possessor, even if the names, marks or letters are not, in every respect, identical. 2 Story Eq. Jur. 951, *et seq.* In *Bell* v. *Locke*, 8 Paige, 75, an injunction was granted re-

straining the defendant from assuming the name of a newspaper published by plaintiff, for the purpose of deceiving the public, and supplanting the plaintiff. And the same principle was applied to the keeper of a hotel who adopted, as the name of his house, the name of another hotel of higher reputation. *Howard* v. *Henriques*, 3 Sandf. S. C., 725.

If, then, these petitioners were organized under the name of their selection without opposition, and the opposing corporation were to file a bill in this court to enjoin the petitioners from using the name chosen by them, on the ground that it was intended to deceive the public, and to supplant the plaintiff, the jurisdiction of the court would be beyond all question. Now, the legislature, by the first section of the act of the 26th of January, 1871, ch. 54, intended that this jurisdiction might be exercised in advance, in the form therein prescribed. If any effect is to be given to the opposition provided for in that section, it is precisely in this way. No person can object to the organization of a corporation, if the petitioners bring themselves within the law, but objection may be raised in opposition, such as might be raised by bill after the organization. To this extent there can be no objection to the jurisdiction.

Is, then, the name selected by the petitioners, "The Ladies' Good Samaritan Society of Nashville," such as is likely to deceive the public, and interfere with the prior rights of "The Nashville Ladies' Good Samaritan Society, No. 2?" And, even if it do not deceive, will it not lead to unnecessary confusion and strife?. Or even if there should be a reasonable doubt on the subject, would it not be a proper exercise of jurisdiction and discretion to prevent any possible difficulty by imposing upon the petitioners the condition of a modification of their name? The court has no discretion as to the terms of incorporation, but it undoubtedly has as to the name. Chancery courts are clothed with authority, by the 11th section of the act of 1871, "to change the name of any private corporation upon application and good reason shown by the directors of such private corporation." The

court would certainly not allow a corporation for one purpose to be organized under a name significant of a different purpose ; as, for instance, a corporation for mining under the name of " The Mining Insurance' Company." Be this as it may, this court will, upon an opposition under the statute *in limine*, do what it would feel authorized to do upon bill filed by the parties aggrieved after organization, and prevent a possible injury.

The petitioners may, therefore, be incorporated under the provisions of the law as hereinbefore set out, upon condition that they take a name which will not lead to difficulty with the prior organization. To this end, no very material change need be made. The omission of the word "good" from the name will suffice. Decree accordingly.