A. V. GEAR and B. L. FINNEY *v.* G. C. KENYON and E. NORRIE.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 4, 1895.          DECIDED NOVEMBER 12, 1895.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE WHITING, WHO SAT IN PLACE OF MR. JUSTICE BICKERTON, ABSENT FROM ILLNESS.

The title to a newspaper, the "Evening Bulletin with which is incor-porated the Independent," is not infringed upon by the publication of a newspaper entitled "The Independent."

Property in a trade-mark cannot be acquired or retained independently of the article which the trade-mark symbolizes.

Intentional abandonment of the use of a trade-mark is intention of the abandonment of the right to the trade-mark.

OPINION OF THE COURT BY JUDD, C.J.

A. V. Gear was the proprietor of a newspaper called the "Independent." B. L. Finney was the proprietor of a news-paper called the "Evening Bulletin." On the 17th June last these two persons formed a partnership, merged the two papers into one, and the partnership published a newspaper under the title "Evening Bulletin with which is incorporated the Inde-

pendent." The defendants thereafter published a newspaper under the title "The Independent."

The plaintiffs' bill against defendants alleges *inter alia* that the plaintiff Gear secured a "copyright" for the title of the newspaper the "Evening Bulletin with which is incorporated the Independent," and applied for but failed to secure copyright for the title "The Independent"; that Gear is the original author of the title the "Evening Bulletin with which is incorporated the Independent"; that on the 24th June last the defendants published a newspaper called "The Independent," though notified by plaintiffs that they would consider it an infringement of their copyright, and that they had never abandoned the title "The Independent," but intended to preserve the same for themselves in their newspaper business; and plaintiffs pray that the defendants may be enjoined from publishing any newspaper under the title "The Independent."

The defendants demurred and the demurrer was sustained by Circuit Judge Cooper on the points that the bill shows no infringement and shows an abandonment of the title "The Independent." The case comes to us on these points alone, the plaintiffs waiving other points which were ruled in their favor.

A few principles of law may here be stated. The right to a trade-mark is founded upon possession, and possession rests upon the mere act of adoption and use. Browne on the law of trade-marks, Sec. 46, and cases cited. Registration of a trade-mark is not essential to its ownership, nor to the right to sue for an infringement, one object of the statute of registration being to afford a convenient method of proving an adoption of the trade-mark; that is, it affords *prima facie* evidence of ownership. A newspaper title merely does not seem to be an appropriate subject of copyright, and therefore the copyrighting by the plaintiffs of the title to their newspaper cuts no figure in this case. Each publication itself may be the subject of copyright, but not the title distinct from the subject matter of publication. "The title of a newspaper may possess all the characteristics of a trade-mark when the same is a newly coined

term or an arbitrary symbol; but that is generally not so."
Browne, Sec. 547.

There are numerous cases in which courts of equity have
enjoined the use of a title of a newspaper which bears such a
similarity to the title of another paper which has the right to it
as a trade-mark that the casual reader, not the close observer,
would not readily distinguish between the two, and would be
likely to be deceived or misled into purchasing the one for the
other. To show infringement, identity is not essential; similiarity
is sufficient. 32 Fed. R. 94. A few of the cases we now cite.

The "Evening Post" was not a sufficient infringement on the
"Morning Post" to entitle plaintiffs to an injunction. *Borth-
wick v. Evening Post*, 37 Ch. Div. 449.

"Chatter Book" was an imitation and an infringement of
"Chatter Box," both books gotten up in the same style and both
juvenile publications. *Estes v. Leslie*, 29 Fed. R. 91.

"The Northwest News" held no piracy of "The New North-
west." 11 Oregon 322.

"El Cronista" held no infringement of "El Cronica." Cited
in 26 Eng. and Amer. Encyc. of Law, p. 271.

"The New Era" is no infringement of "The Democratic Re-
publican New Era." *Bell v. Locke*, 8 Paige 75.

We are not favored upon any allegation in the bill with a
view of the two papers so as to ascertain by inspection whether
they are so similar in title, size, paper, type, method of folding,
etc., as to mislead the casual observer. We have to pass upon
the naked allegations in the bill setting out the respective titles.
We find that they are certainly not *idem sonans*. Nor would
one desiring to buy the "Evening Bulletin with which is incor-
porated the Independent" be likely to be deceived into buying
"The Independent" instead of the former.

Upon the face of the bill we fail to find an infringement
of the title of the plaintiffs' present newspaper. But the plain-
tiffs claim in argument that they still own the title as a trade-
mark, of their former paper, "The Independent," and they
have never abandoned it. There is no exact averment in the bill

that they own this title, but it may be inferred from other allegations. If the plaintiffs still own the trade-mark "The Independent," then the publication of the defendant's paper is an infringement, for the titles are identical. The question remains, therefore, do the plaintiffs still own this trade-mark, or have they lost it by abandonment? A trade-mark may be lost by voluntary abandonment. Mere non-user is not abandonment. But intentional abandonment of the *use* of a trade-mark is intention of the abandonment of the *right* to the trade-mark. Property in a trade-mark cannot be acquired or retained independently of the article which it symbolizes. It differs from a copyright or a patent, for the owner of these may retain them, though he may have abandoned all intention to make use of them. As expressed by the court in *Candee, Swan & Co. v. Deere & Co.*, 54 Ill. 457, "It is the *actual use* of the trade-mark affixed to the merchandise of the manufacturer, and this alone, which can impart to it the element of property." Judge Wallace, in *Atlantic Milling Co. v. Robinson et al.*, 20 Fed. R. 218, says: "The right to the exclusive use of a word or symbol as a trade-mark is inseparable from the right to make and sell the commodity which it has been appropriated to designate as the production or article of the proprietor. It may be abandoned if the business of the proprietor is abandoned."

The bill, in our opinion, shows deliberate abandonment of the publication of the old "Independent" and the use of that name as a trade-mark—but with the intention to retain the ownership of the mark itself. This, as we have seen, is impossible.

The authorities do not consider mere suspension of the manufacture of an article, without evidence of an intention to abandon as sufficient to destroy the right. *Crowley v. Lightfowler*, Law Reports, 2 Ch. 478. "It would be absurd to suppose that a person lost his trade-mark by not putting more goods on the market when it was glutted." *Mouson & Co. v. Boehm*, Id. 26 Ch. Div. 406.

But the bill shows not merely the non-user by plaintiff of the newspaper "The Independent," but the publishing of a

different paper with a different title, which seems to us to show intention to abandon the title "The Independent." We think the demurrer was properly sustained. Appeal dismissed.

*E. P. Dole,* for plaintiffs.

*P. Neumann,* for defendants.