# SUPREME COURT.

## SAMUEL FRENCH and another agt. THOMAS MAGUIRE.

*Copyright — Injunction — Jurisdiction — Unpublished manuscript — right to, when and how protected — what proof necessary to authorize the issuance of an injunction.*

The supreme court of this state has jurisdiction and authority to grant an injunction, at the suit of a resident plaintiff, against a non-resident defendant, restraining him from performing or exhibiting a drama, in a foreign state, in violation of plaintiffs' rights, where the summons and the injunction order are served on defendant, while he is temporarily in this state.

The Constitution of this state has given this court general jurisdiction in law and equity. And, under so broad a grant of authority, where it regularly acquires, by the service of its process, control over the parties, it must have authority to adjudicate upon their rights, in actions of this description. All that is required for that purpose is to affect and restrain their action, and that may properly be done wherever the party to be affected may be found and served with process. It is not an exercise of mere local, but an element of general, jurisdiction.

An omission by a defendant, to deny facts which are entirely and peculiarly within his knowledge, will be regarded as sufficiently confirming them, to justify the court in acting upon the hypothesis of their truth.

Where the plaintiffs alleged that they had acquired title to the unpublished drama, known as "Diplomacy," for the purpose of producing and exhibiting it within the United States, and that, in violation of their rights, the defendant is about producing it in a theater controlled by him in the city of San Francisco ; then setting forth the agreement or contract of sale:

*Held,* that the fact that the sale relied upon in support of the action was made, may properly be assumed from the agreement which appears to have been so authenticated as to establish the fact of its genuineness.

As a general proposition, it is legally true, that *mere information* as to the existence of the rights relied upon will not justify the issuing of an injunction. But when the informant is beyond the power of the court

French agt. Maguire.

because of his residence in a foreign country, and where action more prompt than is consistent with the long delay necessary to obtain the affidavits of these foreign informants is required for the protection of the plaintiffs' rights, the court may act upon this information and issue an injunction, especially where the information itself is sustained and rendered entirely credible by circumstances well established in the case.

To protect a person in the possession of an unpublished manuscript, the law does not require that it shall be the exclusive work of one individual. It may be that of one or many, acting in co-operation, and, whichever may be the case, the right is substantially the same, and the person is equally entitled to the protection of courts of justice.   The same reasons that will induce security to the individual will extend it to all whose joint action may contribute to the result finally attained.

By the common law, authors were protected in the enjoyment of the pecuniary benefits of their literary productions.

The law still continues to maintain and protect the right of the author to his unpublished manuscript or composition, the same as it formerly did, independent of the statutes concerning copyrights.

Exhibiting the manuscript or composition to others, or, where it may be adapted to that end, performing it by theatrical representations is not deemed sufficient to constitute the publication which will deprive the author of his exclusive right.

Reading, exhibiting or performing, will permit the observer to appropriate to himself so much as his memory may be capable of retaining.

But it will not allow the hearer and observer to appropriate and use the entire composition, with its incidental stage accompaniments.   That right is in the author and his assignee.

*Special Term, August,* 1878.

MOTION to continue the injunction order restraining the theatrical performance or exhibition of the play or drama known as "Diplomacy."

*A. J. Ditenhoefer,* for plaintiffs.

*Charles W. Brooke,* for defendant.

DANIELS, *J.* — The plaintiffs reside in the city of New York, and the defendant is a resident of the city of San

Francisco, in California. He was served with the summons in this action and also with the injunction order while he was temporarily in the city of New York. And as the order restrained him from performing or exhibiting this drama in the city of San Francisco, it has been strenuously urged that this court has no jurisdiction of the case, but if the plaintiffs' rights were in danger of being infringed by the threatened or apprehended act of the defendant, redress should be alone sought for in the courts having unquestioned jurisdiction over that locality. It was considered at the time of the argument that this objection was not well founded, and further reflection has only served to confirm that conviction. When the adverse party is found within this state its courts have no right to decline to respond to the appeal of its citizens for redress and direct them to go abroad for that justice which they may properly obtain at home. It would impose a hardship upon them which no court would have the right to create, simply because it would result in promoting the convenience of the defendant.

The Constitution of this state has given this court general jurisdiction in law and equity (*Const. art.* 6, *sec.* 3). And under so broad a grant of authority, where it regularly acquires, by the service of its process, control over the parties, it must have authority to adjudicate upon their rights in actions of this description. All that is required for that purpose is to affect and restrain their action, and that may properly be done wherever the party to be affected may be found and served with process. It is not an exercise of mere local, but an element of general, jurisdiction.

The authority of courts of equity over controversies arising beyond the limits of their local jurisdiction received an early examination in the case of *Massie* agt. *Watts* (6 *Cranch*, 148), and it was there held, as the result of the authorities, that in cases " of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may

be affected by the decree" (*id.*, 160), and this principle has since been acted upon as entirely sound in cases arising within this state (*Sutphen* agt. *Fowler*, 9 *Paige*, 280 ; *Bailey* agt. *Ryder*, 10 *N. Y.*, 363 ; *Newton* agt. *Bronson*, 3 *Kernan*, 587 ; *Gardner* agt. *Ogden*, 22 *N. Y.*, 327 ; *Story's Equity Jur.*, vol. 2, sec. 899). Under the authority sustaining the existence of the jurisdiction of the court in cases of fraud, trust and contract irrespective of the actual residence of the parties or the place in which the controversy originated, it may clearly be held to include the present case; for, as it has been charged, it is one of fraud, and the defendant has been regularly subjected to the jurisdiction of this court by the personal service of the summons upon him.

In support of the action it has been alleged that the plaintiffs have acquired title to the unpublished drama known as "Diplomacy," for the purpose of producing and exhibiting it within the United States, and that, in violation of their rights, the defendant is about producing it in a theater controlled by him in the city of San Francisco. Other allegations are contained in the complaint for the purpose of supporting these claims, but they finally result in the affirmation of these facts. It has been objected, on the part of the defendant, that the allegations made have not been based upon sufficient knowledge to justify the assumption of their truth, and for that reason no case has been made for an injunction. This objection must be chiefly considered as affecting the proof of the plaintiffs' title, for the defendant has in no way denied the charge that he has announced his design and intends to produce and exhibit the drama in his theater in San Francisco ; and the omission to deny facts so entirely and peculiarly within his knowledge must be regarded as sufficiently confirming them to justify the court in acting upon the hypothesis of their truth. This is a well established rule in the law of evidence. It is founded on sound reason and justified by human experience (*People* agt. *Doyle*, 26 *N. Y.*, 578 ; *Gordon* agt. *People*, 33 *id.*, 501, 508, 509). The point simply

remains under this objection, whether the evidence of the plaintiffs' title has been sufficiently presented to justify the issuing of an injunction for its protection. The papers show that to have been acquired from Squire Bancroft, a resident of London, in England, by means of a contract made between him and the plaintiffs. By this contract Bancroft, in terms, sold, assigned, transferred and set over unto the plaintiffs "for the United States of America, the play known as 'Diplomacy,' which is an original adaptation of Victorien Sardou's play 'Dora,' written and composed by Saville Rowe and Bolton Rowe of London, and the original manuscript of said play, and all the right, title and interest of said party of the first part, and of the author of said play, in and to the said play and said original manuscript, which is herewith delivered to said party of the second part." The contract then proceeded to state that the play was an original version, composed and written by the Rowes, that it had not been published, printed or dedicated to the public, and that the vendor would protect the title of the plaintiffs to such play and manuscript. And for that they agreed to pay fifty dollars in cash for each performance of the play at Wallack's Theater, New York. That the sale relied upon in support of the action was made, may properly be assumed from the agreement which appears to have been so authenticated as to establish the fact of its genuineness. Whether it was an original unpublished play, owned by the vendor when he made his agreement for its sale, are the remaining facts to be considered on this portion of the case. The existence of these facts has been alleged from information stated to have been derived from Sardou, as the original author, and from Bancroft as his vendee, under whose employment the play was adapted to the English and American stage.

As a general proposition it is legally true that mere information as to the existence of the rights relied upon will not justify the issuing of an injunction (*Hecker* agt. *Mayor, &c.,* 28 *How.,* 211 ; *Hall* agt. *Bond,* 22 *id.,* 272). But this, like

many other general rules, cannot be of universal application. An exception to it has always existed in cases where it was made to appear that the affidavit of the informant could not be obtained. Courts of justice require the best evidence which it may be in the power of the party to produce. To require more than that would, in many instances, be a denial of justice. For that reason, where the informant has refused to make an affidavit stating his knowledge of the facts affirmed by him, courts have deemed themselves, in proceedings of this nature, justified in acting upon his information. The reason of the rule was that the party supplied the best evidence in his power. That no longer exists now where the informant is within the state, for the law has provided the means for compulsorily obtaining his affidavit. But when the informant is beyond the power of the court, because of his residence in a foreign country, these means are entirely unavailable. Then the preceding rule must be appealed to and applied so far as may consistently meet the emergency of the case. And the reason of it would relieve the party applying from the necessity of obtaining the affidavits of such informants when immediate action was required for the protection of their rights. Such an emergency appeared in this case. Defendant resided, and was engaged in the execution of the apprehended purpose, in another state. Action more prompt than was consistent with the long delay necessary to obtain the affidavits of these foreign informants was required for the protection of the plaintiffs' rights. And if their information could not be properly acted upon, the plaintiffs would necessarily be deprived of redress. Under such circumstances and in such an emergency, the reason of the rule requiring the best evidence before action could ordinarily be taken, justified its relaxation. The plaintiffs presented the best evidence in their power, and on that the court could, under the peculiar circumstances existing, act with propriety.

But even if that could not be done, the plaintiffs' application should not, on that account, be allowed to fail. For

the information itself was sustained and rendered entirely credible by circumstances well established in the case. And from them it appears that there never has been in the literature of the French stage any other play resembling that of " Dora," as it was originated and composed by Sardou. And that there has been no other play resembling or known by the title of the play of " Diplomacy." That the first of these plays has been attended with great success for a long time while it was performed in Paris. And the second, known as its adaptation, under the title of " Diplomacy," has met with similar success in London, and also in the city of New York, where, for seventy nights, it was performed at Wallack's theater. It has not been in terms stated that these performances were under the liberty or auspices of the respective persons claiming title to the composition. But that may be readily and reasonably inferred from the fact that in neither place has it been shown that any person appeared with any conflicting claim of title. And the fact that both were so exhibited is very decided evidence of right; for possession of property of this description, as of that more tangible in its nature, is evidence that the possessor is in fact the owner.

The contract made with the plaintiffs and the allegation of the fact in their complaint, also shows that the original manuscript of the play of " Diplomacy" was delivered with the agreement to them. And that very decidedly confirms the fact of their possession. Then it appears that the defendant negotiated with, and endeavored to purchase the play from, them and offered them the sum of $700 for the right to produce it at his theater in San Francisco. This was not an offer to settle any existing dispute, but to purchase from them what the offer necessarily conceded they had the power and right to sell.

The case has been reasonably well made out; as completely so as it probably could be, when it is remembered that the evidences of the original title can only be fully supplied by taking the depositions of witnesses in foreign countries, which

cannot be done in this state of the case, but which it is highly probable will sustain the plaintiffs' right when they can be obtained. The proof was, under its peculiar circumstances, sufficient to warrant the injunction so far as it was dependent upon the evidence of the facts themselves (*Campbell* agt. *Morrison*, 7 *Paige*, 157).

It has, however, been further objected that even if the facts set forth should be found to be sufficiently established, that the injunction would still be incapable of being sustained, because the title to such relief would not even then be properly made out. But the facts that Sardou appears to have claimed the play of "Dora," and that his claim was not disputed while it was performed in Paris; that Bancroft claimed to have acquired it from him, and after procuring it to be adapted to the English stage, had it performed in London, and then, as the contract states and the complaint discloses, sold and delivered it with the original manuscript to the plaintiffs, under whose authority it was for a long time performed in New York, together with the defendant's endeavor to purchase it from them, are sufficient, *prima facie*, to establish the origin and title as they have been alleged. Sardou appears to have been the original author and composer of "Dora," and with his authority Bancroft procured it to be so far changed as to become the English drama "Diplomacy." That was "Dora" adapted to the English and American stage. And in the adaptations made the same originality appears to have entered as in the composition of the original play. So far as the play of "Dora" was retained, the ideas and their mode of expression were those of Sardou translated into English. When that play was changed it was done so by the labor and originality of the Messrs. Rowe, who transferred their work to Bancroft, under whose employment it had been performed. And by these two processes the play of "Diplomacy" was originated, and as so originated it became the property of Bancroft, who transferred it to the plaintiffs.

To protect a person in the possession of an unpublished

manuscript of this description the law does not require that it shall be the exclusive work of one individual. It may be that of one or many acting in coöperation, and whichever may be the case the right is substantially the same, and equally entitled to the protection of courts of justice. The same reasons that will induce security to the individual will extend it to all whose joint action may contribute to the result finally attained.

It was very early the policy of the common law to protect authors in the enjoyment of the pecuniary benefits of their literary productions. And these probably extended so far as to include the unlimited right of publication and sale. But this was afterwards so far changed, on account of the statute of Anne, by the decision made in the house of lords in the case of Becket and Donaldson, as to exclude the author's right after publication. That was considered an abandonment of the author's exclusive right; and since then it has been protected after publication only under the laws providing an exclusive copyright. An instructive history of the contest attended with this result will be found in *Curtis on Copyright*, (49–68). But it only deprived the author of his exclusive right after publication. Before publication it has continued to be maintained the same as it was first assured. And the law still continues to maintain and protect the right of the author to his unpublished manuscript or composition the same as it formerly did, independently of the statutes concerning copyrights. And exhibiting the manuscript or composition to others, or, where it may be adapted to that end, performing it by theatrical representations, have not been deemed sufficient to constitute the publication which will deprive the author of his exclusive right. Reading, exhibiting or performing will permit the observer or hearer to appropriate for himself so much as his memory may be capable of retaining. But it will not allow the hearer and observer to appropriate and use the entire composition, with its incidental stage accompaniments. That right still remains in the author and

his assignee.   And it has generally been maintained when the subject has been formally brought to the judicial attention of courts of equity.   In this respect all literary compositions have been placed substantially upon the same foundation (*Hoyt* agt. *Mackenzie*, 3 *Barb. Chy. Rep*, 320 ; *Woolsey* agt. *Judd*, 11 *How. P. R.*, 49, 55, 56 ; *Wheaton* agt. *Peters*, 8 *Peters*, 591, 657; *Palmer* agt. *Dewitt*, 47 *N. Y.*, 532 ).   In this last case these principles were evidently considered to be the settled law ; and that of itself should secure the continuance of this injunction (*Story on Equity Jur., vol . 2, section* 950 ).   The motion made on behalf of the plaintiffs must be allowed to prevail ; and the usual allowance of costs should be made to them.