STEPHEN A. POTTER AND OTHERS, RESPONDENTS, *v.* THOMAS B. McPHERSON AND OTHERS, APPELLANTS.

*United States courts have exclusive jurisdiction of actions for an infringement of a copyright— an author's property in his manuscript is lost by its publication— what combination of words will be protected as a trade-mark—what degree of similarity must be shown to justify an injunction restraining the use of another's trade-mark.*

The plaintiffs, and their predecessors, have, since 1863, published and offered for sale, as a system for teaching and learning penmanship, books containing the copies to be written, and also directions for learning, acquiring and practicing the said art, with such illustrations as are required to convey and explain the ideas sought to be inculcated. On the cover of each book was printed "Payson, Dunton & Scribner's National System of Penmanship," and the book has been called and known as the "National System of Penmanship."

The defendants thereafter published a book, substantially in the same form, so far as its general appearance, binding and color was concerned, having upon the cover the words "Independent National System of Penmanship," such words being printed in the same manner, and the letters being of the same size and form, and occupying the same position as they do upon the cover of the plaintiffs' book. The directions, instructions and illustrations contained in the two books were, in many cases, literally, and in the remaining cases, substantially the same.

On an appeal from an order restraining the defendants from publishing or selling the said book, or any other book representing or imitating those of the plaintiffs, and from using the words "National System of Penmanship" in connection therewith, *Held*, that, as to the printed instructions, the injunction could not be maintained, for the reason that, if the plaintiffs had copyrighted their book, the United States courts had exclusive jurisdiction of all actions for an infringement thereof, and that if they had not copy-

righted it, they had lost their exclusive property in the said instructions and directions by publishing the same in a printed book and offering it for sale.

That, so far as the injunction restrained the defendants from using the words "National System of Penmanship" in connection with their work, it was proper and should be affirmed.

That the injunction was properly issued if it appeared that persons, desiring to purchase the plaintiffs' publication, might well accept that of the defendants, supposing and believing it to be the plaintiffs', even though persons engaged in the trade of buying the books, with an intention to re-sell them, might not be misled by the resemblance, and though the difference could be readily detected by a comparison of one book with the other.

APPEAL from an order made at Special Term continuing an injunction granted herein.

This action was brought to restrain the defendants from publishing and selling certain copy books. The complaint alleged that the plaintiffs were the owners of a trade-mark or right of property in the name "National System of Penmanship," as applied to certain books, containing a system for teaching and learning penmanship, published and sold by them, the specific name of their publication being "Payson, Dunton & Scribner's National System of Penmanship." That the defendants, McPherson & Greene, had issued one number of a copy book similar to that of the plaintiffs, and imitating it exactly in style of binding, color and ornamentation. The name of the defendants' book differed from that of the plaintiffs' only in the use of the word "Independent" as a substitute for "Payson, Dunton & Scribner."

*Artemas B. Smith*, for the appellant. The words, "National System of Penmanship," cannot be a trade-mark. No person can acquire exclusive property in the common words of language. (*Taylor* v. *Gillies*, 59 N. Y., 331; Am. Trade-Mark Cases, 736; *Stokes* v. *Landgraff*, 17 Barb., 608; Browne on Trade-Marks, §§ 144, 148; *Canal Co.* v. *Clark*, 13 Wall., 311.)

*Betts, Atterbury & Betts*, for the respondents. The plaintiffs have a clear right of property in the words "National System of Penmanship," as applied to a copy or writing book; and this whether the words "Payson, Dunton & Scribner" are added to

the said name or not. (Sebastian on Trade-Marks, 167; *Matsell* v. *Flanagan*, 2 Abb. Pr., N. S., 459; *Snowden* v. *Noah*, 1 Hopk., 355; *Hogg* v. *Kerby*, 8 Ves., 215; *Chappel* v. *Shead*, 2 Kay & J., 117; *Messerole* v. *Tynberg*, 36 How. Pr., 14; *Congress Co.* v. *Highrock Co.*, 57 Barb., 526; *Hazard* v. *Caswell*, 57 How. Pr., 1; *Newman* v. *Alvord*, 6 Sickles, 189; *Hine* v. *Lart*, 10 Jur., 106; *Taylor* v. *Taylor*, 23 L. J., Ch. 255; *Witherspoon* v. *Currie*, Law R., 5 H. L., 508; *Williams* v. *Johnson*, 2 Bosw., 1; *Williams* v. *Spence*, 25 How. Pr., 366; *Field* v. *Lewis*, Seton, 4 ed., 237; *Hurst* v. *Denham*, Law R., 14 Eq., 542.) It is no answer for the defendants to say that they have not adopted the whole of the trade-mark of the plaintiffs; that they call their books the "Independent National System of Penmanship," whereas the plaintiffs' are called "Payson, Dunton & Scribner's National System of Penmanship." (*Clement* v. *Maddock*, 1 Giff., 98; *Mack* v. *Petter*, Law R., 14 Eq., 431; *Gillott* v. *Esterbrook*, 47 Barb., 455; 48 N. Y., 374; *Braham* v. *Bustard*, 9 L. T., N. S., 198; *Orr* v. *Johnson*, 27 Weekly Rep., 575.) It does not protect the defendants that the first purchasers from them would distinguish between their goods and those of the plaintiffs. The copy books are sold to wholesale buyers for the purpose of re-sale to retailers, and from them to users. (*Clark* v. *Clark*, 25 Barb., 76; *Orr* v. *Johnson*, Weekly Notes, January 31, 1880; *Singer Mfg. Co.* v. *Wilson*, 26 W. R., 664; *Witherspoon* v. *Currie*, Law R., 5 H. L., 508; *Edelsten* v. *Edelsten*, De G., J. & S., 185; *Seixo* v. *Provezende*, Law R., 1 Ch., 192; *Ford* v. *Foster*, Law R., 7 Ch., 611.)

DANIELS, J.:

The injunction issued in this case, and continued by the order from which the appeal has been taken, restrained the defendants from publishing, selling, or exposing for sale the books referred to in the complaint, and from publishing, selling or exposing for sale any imitation of such books or pamphlets, or any books or pamphlets made to represent the books and pamphlets sold by the plaintiffs and called "Payson, Dunton & Scribner's National System of Penmanship," and from using the name of "National System of Penmanship," in connection with books or pamphlets published or sold

by the defendants. The books referred to in the complaint, and also in the order itself, are published as a system for teaching and learning penmanship. They contain as well the copies to be written, as detailed directions for learning, acquiring and practicing the art of penmanship, together with illustrations required to convey the ideas to be inculcated. In these respects the books published by the plaintiffs and those of the defendants are to a great extent literally the same, and where that is not their character they are substantially the same. These directions, instructions and illustrations are contained in three printed pages of the books, and so far as they extend they do not differ substantially in theory or detail from other books published for the purpose of being used in teaching the arts or sciences taught in schools. The system is as complete in itself as that which is contained in the most elaborate publications made upon other subjects, and this publication substantially constitutes a book in and of itself. In support of the injunction restraining the defendants from publishing this book, affidavits have been presented on the part of the plaintiffs tending to show that their book had been copyrighted, but this statement has been fully controverted by the affidavits and proofs presented on the part of the defendants. It is unnecessary, in the disposition of this case, to determine which of these statements may be correct, for if the book has been copyrighted under the laws of the United States, while that would secure to the plaintiffs the right to restrain its publication by the defendants under those laws, it would not afford this court jurisdiction over the subject matter of the controversy.

The right, arising under the laws of the United States, would be one which would be within the exclusive jurisdiction of the Federal judiciary to vindicate and maintain. (*Dudley* v. *Mayhew*, 3 Comst., 9.) If it be conceded, therefore, that the plaintiff's book has been copyrighted, as this court has no jurisdiction over an action brought for redress, upon that ground, it could not, by means of an injunction, restrain the defendants from making an improper publication of the plaintiffs' work. But if, as it is contended on the part of the defendants, the fact is that the book never was regularly copyrighted, then the publication and sale of it deprived the plaintiffs of their exclusive property in its composition, for, by the common law,

while an author has property in his manuscript, that continues only so long as it is not made the subject of publication and sale. When it becomes embodied in the usual manner in a book for general sale, and is sold indiscriminately to all those desiring to acquire it, the author's exclusive right of property is gone, and all other persons, after that, are at liberty to publish and sell the book. (*Shook* v. *Daly*, 49 How. Pr., 366; *Palmer* v. *De Witt*, 47 N. Y., 532.) Until published, the work is the private property of the author, wherever the common-law rights of authors are regarded, but when published with the assent of the author, it becomes the property of the world. (Id., 539; *French v. Maguire*, 55 How. Pr., 471.) The only manner in which this result can be prevented is by the author or publisher availing himself of the rights secured by the copyright laws of the United States. Where he fails to do that, and publishes and sells his work, or permits that to be done by others with his assent, the exclusive property of the author in the publication is afterwards lost. According to these principles, which are well sustained by the authorities, so much of the injunction ordered as restrains the defendants from publishing this book, or any imitation of any book or pamphlet representing that sold by the plaintiffs, was unauthorized, and to that extent, it must certainly be vacated. The only portion of the injunction, therefore, concerning which it can be claimed on the part of the plaintiffs that it should be continued, is that relating to the title under which the plaintiffs' book has been published; for as to that, the law does not deprive them of their rights of property by the mere publication and sale of the book itself. That is the distinguishing incident by which their publication becomes known in the market, and as to that they have a right to maintain the exclusive use, where it has been properly devised, for the purpose of maintaining their trade, and preventing it from being appropriated to the business of other persons. It appears by the affidavits produced on the part of the plaintiffs, that the publication was commenced certainly as early as the year 1863, and that it was then designated, in addition to the name of the composers, as their "National System of Penmanship," and it appears to have been so continued and known from that time down to the present. This fact is not at all dis-

proved by the evidence contained in the defendants' papers; for while the book, in the trade, has been ordered as the book of its writers, or composers, or in some other manner, without using the controverted phrase tending more particularly to describe it, it will not follow from that circumstance, that it was not also known and distinguished by the title given to it, and printed upon its cover. The evidence on the part of the plaintiffs is that the different forms in which the book has been published have at all times been accompanied with this designation, that is, it has been called and known as the "National System of Penmanship," and these words, when connected with the names of the persons by whom the system was devised and composed, indicated its origin sufficiently to require their use of it to be protected under the laws of the State, relating to the use of trade-marks. Upon that subject, the law protects manufacturers and dealers in the use of words, phrases or other devices employed by them to distinguish their commodities from those of other dealers, when they are such as to indicate the origin or ownership of the article to which they are applied. (*Farina* v. *Silverlock*, 39 Eng. L. & Eq., 514—where the exclusive right to use the term "eau-de-cologne" was maintained; *Seixo* v. *Provezende*, L. R., 1 Ch. App. 192; *Colman* v. *Crump*, 70 N. Y., 573—where the use of the device of a bull's head was sustained as a trade-mark; *McLean* v. *Fleming*, 96 U. S., 245—which held the right to use the name of "Dr. McLean's Liver Pills" to be one which should be protected; *Newman* v. *Alvord*, 49 Barb., 588.) The principles sustained by these and other cases, has been so far extended as to include other devices adopted for the purpose of distinguishing one person's business and the commodities in which he may deal, from those of others. (*Glen Manuf'g Co.* v. *Hall*, 61 N. Y., 226.) And it has also been applied to the protection of the rights of the publisher in the title to newspapers, books and pamphlets. In *Bell* v. *Locke* (8 Paige, 75) its application to the publication of a competing newspaper was considered, and the injunction denied only because the title of the defendants' paper was so clearly distinguishable from that of the plaintiff's as not to be calculated to mislead, or deceive the public. A similar point was considered in the case of *Clement* v.

*Maddock* (1 Giff., 98), where the defendant was prevented, by means of an injunction, from selling a publication bearing substantially the same title as one made by the plaintiff. In *Mack* v. *Potter* (Law R., 14 Eq., 431) the same principle also was applied. There the title of the plaintiff's book was that of " Birthday Scriptural·Text Books," while the defendant published his work under the title of " Children's Birthday Text Books," and the latter was held to be so clearly an appropriation of the title previously applied to the publication of the plaintiff's work as to be the proper subject of restraint, by means of an injunction. The same point was considered in *Bradbury* v. *Dickens* (27 Beav., 53), where it was held that the title of " Household Words " given to a maga·· zine was property, and for that reason the subject of a sᴇⁱᴇ, under an order of·the Court of Chancery. While, therefore, the plaintiffs' book itself may be published in case it has not been copyrighted— which is a subject over which this court has no jurisdiction—the title given to it cannot be appropriated, and used by the defendants. That they have used the same title has been denied by the defendants, but it is very evident from the affidavits read on the part of the plaintiffs, and the books themselves, that they are not correct in this denial. An inspection of the books discloses the facts that they are published substantially in the same form so far as general appearance, binding, and color of the covers are concerned; and upon the cover of the defendants' book the phrase " National System of Penmanship," which has long been the title of the plaintiffs' publication, is printed in the same manner, the same size and forms of letters, and occupying the same position as they do upon the cover of the plaintiffs' book. The resemblance of the words and letters composing this phrase is as complete as it could well be made, and from the identity of the contents of the books, their size, and general appearance, the conclusion seems to be well warranted, that they could not in that manner have found their place upon the defendants' book, unless it was the·result of design upon their part to imitate the plaintiffs' book. They have claimed that even if this were so that the difference between the title-page of their book, and that of the plain'iffs, is such as to prevent the use of this descriptive phrase from mislead-

ing purchasers, and it is conceded by the plaintiffs that that would be the case as to persons engaged in the trade and purchasing books, for the purpose of afterwards selling them. But that the one would not be readily purchased as the publication of the other by a person buying the work for use, is denied, and the contrary of this is asserted to be the truth. In order to render it necessary that a publication or imitation of this nature should be restrained, it is sufficient that persons who may desire to purchase the plaintiffs' publication, might very well accept that of the defendants, supposing and believing it to be the same. That the difference might be readily detected by a comparison of one book with the other, is not sufficient to allow the defendants to appropriate and use the plaintiffs' title. If in its use, persons under ordinary circumstances, desiring to purchase one, would receive the other in its place, believing that they had obtained the work intended to be bought, that will not only justify, but require the court to interfere, for the purpose of preventing the use of the plaintiffs' title. This has been the principle by which the courts have been governed in imposing restraints of this nature, and it is well sustained by the authorities already referred to, and also by the cases of *Williams* v. *Johnson* (2 Bos. 1), and *Falkinburg* v. *Lucy* (Cox Am. Tradem. Cas., 449). Two of the defendants were in the employment of the plaintiffs, before they commenced business for themselves. In the course of that employment, they acquired a minute knowledge of the plaintiffs' business, including the extent and advantages of their sales of the book now in controversy. And when they applied to the imitation of the one published and sold by themselves, the name by which the plaintiffs' book had become extensively known in the market, it is to be inferred that it was done for the purpose of promoting their own interests, by inducing purchasers to believe that their article was the same as that they had previously been accustomed to buy. It could not have been transcribed from one to the other, by the same type, in the same form, and occupying the same relative position on the page, without design on the part of the defendants, and it is not reasonable to suppose that this design was either formed or executed without the expectation that they would derive advantage from the resemblance which it would

give their book to that of the plaintiffs. It is claimed by the defendants that this designation was of no value to the book, and that its omission would not have affected their sale. If that were the case, then why should this apparent effort have been made, to place the title of the one upon that of the other, in the identical manner in which it had so long been used by the plaintiffs? The fact itself, that it has been so used, is at variance with the truth of this statement. Where such a simulated resemblance is found in the title made use of by one person to that previously used by another, long engaged in the same business, the inference is just and natural that the motive for doing so is to acquire improperly the patronage and trade of the other, and no reason exists for excluding this case from the control of that presumption. The law does not allow one person in that manner to acquire the advantages in trade which may have been secured by the efforts and reputation of another, previously engaged in the same line of business. On the contrary, it will protect the party whose wares, commodities, or publications have become identified in the market, under any appropriate symbol, words, phrases or devices, from the appropriation and use of them by other and competing dealers, in the same description of property. It has been urged that the phrase "National System of Penmanship" could not be so exclusively appropriated by the plaintiffs and their predecessors, and the cases of *Taylor* v. *Gillies* (59 N. Y., 231), where it was held that the phrase "Gold Medal" could not be so appropriated; and *Canal Co.* v. *Clark* (13 Wall., 311), holding that the phrase, "Luckawanna coal" could not be exclusively used by one party so as to deprive another obtaining coal in the same nominal locality from making use of it, have been relied upon in support of this position. But they are manifestly different in their circumstances from the case which the court is now required to decide. The phrase made use of by the plaintiffs is a combination of words not otherwise employed in this trade, and which appropriately express the publication made by them. Within the authorities already referred to, they are entitled to be protected in its enjoyment and use against the defendants in this case; and while the injunction, in other respects, should be vacated, so far as the use of

the phrase "National System of Penmanship" is restrained, it should be sustained.

DAVIS, P. J., and BARRETT, J., concurred.

Order modified.