<hr />

### FLERON *v.* LACKAYE.

*(Superior Court of New York City, Special Term.  April, 1891.)*

1. LITERARY PROPERTY—DRAMATIZATION OF NOVEL.
   Plaintiff, who translated a novel, and afterwards dramatized it, is entitled to an injunction restraining defendant, an actor, who memorized the lines of one of the characters while in plaintiff's employ, from speaking such lines, and doing the business peculiar to plaintiff's dramatization, in a rival theater, where another dramatization of the same novel is being performed.

2. SAME—DEFENSES.
   The fact that plaintiff has licensed a third person to produce the play for a limited time does not disable him from maintaining the injunction proceedings, as he is the owner of the dramatization, and interested in its preservation from piracy.

Action by William Fleron against Wilton Lackaye to enjoin defendant from using plaintiff's dramatization while acting the part of Pierre Clemenceau in the "Clemenceau Case."  Plaintiff had translated Dumas' novel of that title, and subsequently dramatized it, introducing original features in the play, and freely rendering and paraphrasing the novel.  Defendant, while in plaintiff's employ, memorized the lines of the character Pierre Clemenceau.  Another

dramatization of the same novel is being produced at a rival theater, and defendant is playing said part there precisely as it has been written by plaintiff, with the stage business peculiar to plaintiff's dramatization. Plaintiff alleged that he has licensed the production of the play during the season by one Brady, reserving royalties to himself from the proceeds, and that defendant's conduct is injuring his property and depreciating the royalties. Plaintiff obtained a preliminary injunction, and now moves for its continuance *pendente lite.*

*Hart & Price,* for plaintiff.    *C. M. Clancy,* for defendant.

McADAM, J. He who honestly translates or dramatizes, produces a work in a new and useful form, and is entitled to the same protection extended to original compositions. The value of a translation depends upon the learning and ability of the person who does the work, and upon his adaptability to the particular task undertaken. It requires versatile talent of a high order to do it well. Dramatization requires the skill and experience of the playwright, and the success of the work depends upon his dramatic knowledge and genius. Dion Boucicault received $30,000 for dramatizing "Led Astray," and other playwrights have received sums almost as large for similar work. It follows that such productions are valuable property, that requires and must receive protection. Any one may dramatize a novel, and the dramatization becomes his property, (*Daly* v. *Byrne,* 43 N. Y. Super. Ct. 261, affirmed 77 N. Y. 182,) and the author or his assignee, whether a citizen or an alien, is entitled to protection, (*Shook* v. *Daly,* 49 How. Pr. 366; *Widmer* v. *Greene,* 56 How. Pr. 91;) and it matters not whether it be the exclusive work of one, or of several acting in co-operation, (*French* v. *Maguire,* 55 How. Pr. 471.) In short, all literary compositions now stand substantially upon the same foundation. The owner's rights in a manuscript play are not lost or prejudiced by its public performance, and no matter by what means a copy may be obtained, whether by carrying in the memory, or by the stenographic notes of a spectator, its use without permission is piratical. *Palmer* v. *De Witt,* 32 N. Y. Super. Ct. 530, affirmed 47 N. Y. 532; *French* v. *Conelly,* 1 Wkly. Dig. 197. The plaintiff does not dispute the right of any one to translate Dumas' novel, or to dramatize and represent it on the stage, nor does he contest the right of the defendant to take part in such performance, and speak the lines of such translation and dramatization. He insists, however, and with right, that the defendant, while performing under such other dramatization, shall not speak the lines nor do the stage business peculiar to the plaintiff's dramatization. If the defendant had memorized the plaintiff's lines while attending a performance given by the plaintiff, it would not accord with any notion of propriety to take them to a rival establishment, and there repeat them as somebody else's literary production. The law would call this piracy, and enjoin it by injunction. The fact that the defendant memorized the lines while in the plaintiff's employ does not better his case. What came to him during his employment was imparted under a relationship that required him to be faithful to his employer's interests, and taking his employer's property, and using it for the profit and gain of another is at least a breach of confidence. By analogy, High, Inj. § 22; Hil. Inj. § 87. At all events, the act is without justification in law or morals, and must be enjoined. The defendant cannot avail himself of the plaintiff's labors or literary efforts, nor can he dovetail the plaintiff's lines into the play of another, and have all pass as the dramatization and literary product of that person. In order to keep up the high sense of honor in the dramatic profession, its members must not forget "to suit the action to the word, and the word to the action."

The license given to Brady does not disable the plaintiff from maintaining the action. He is the owner of the dramatization, and interested in its preservation from piracy. An injury to it reaches his proprietary right, notwith-

standing the temporary license given Brady to perform the play for a limited period. Brady might, perhaps, have enjoined the defendant's conduct, on the ground of injury to his special property, but this is no answer to the plaintiff's action. Any person injured by the wrongful act of another has a remedy for the wrong, and the fact that more than one has been injured is no defense. Each may redress his special injury without interfering with the other. In *Grover* v. *Swain*, 29 Hun, 454, it was held that a mere agent or servant of the person whose action the plaintiff is entitled to restrain should not be made a party defendant, unless the party defendant is under some "legal liability to the plaintiff upon the facts stated, either as a wrong-doer or tort-feasor, or as a party to some agreement or arrangement with him which could be enforced by judgment." The defendant, on the facts presented by the plaintiff, is a wrong-doer and tort-feasor, and the principle decided by that case does not exempt the defendant from the injunction prayed for, but makes him liable to it. The suggestion that the novel or the dramatization is immoral is answered by the want of evidence on that subject; for, in the absence of proof to the contrary, the court must assume that it is a legitimate and moral production, particularly in view of the fact that it has been produced with approval before critical audiences at one of the first theaters in the city, *i. e.*, Niblo's, where dramatic art has long held sway. The plaintiff is entitled to have the injunction continued.